UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FIRST DATA MERCHANT SERVICES
CORPORATION, a Florida corporation                     CASE NO.:

      Petitioner,

v.

GRANT/SEEBECK INTERNATIONAL, LLC,
a Delaware limited liability company,

      Respondent.
_____/

**PETITION TO CONFIRM ARBITRATION AWARD
AND INCORPORATED MEMORANDUM OF LAW**

      Petitioner, First Data Merchant Services Corporation ("FDMS"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, hereby moves this Court to confirm an arbitration award rendered in favor of Respondent, Grant/Seebeck International, LLC ("GSI"), and in support thereof, states as follows:

**PARTIES, JURISDICTION, AND VENUE**

      1.    This is a Petition, pursuant to Section 9 of the FAA, to confirm an arbitration Award, dated May 15, 2015 (the "Arbitration Award"), awarding GSI a total Award of $7,059,049.30 plus post-award interest of $918.64 per day from and after April 20, 2015 until the Award is paid in full or reduced to judgment, whichever is earlier.  A copy of the Arbitration Award is attached hereto as Exhibit A.  Accordingly, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

      2.    FDMS is a Florida corporation.

3.  GSI is a Delaware limited liability company with its principal places of business in Wilton, Connecticut. At all material times, GSI had substantial and not isolated contacts in Florida.

4.  Pursuant to Section 9 of the FAA, this Court has personal jurisdiction over GSI, and venue is proper in this District, because, among other reasons, the Arbitration Award was entered in Miami-Dade County, Florida and all relevant proceedings were conducted therein.

5.  This Petition is brought within one year after the Arbitration Award was rendered.

6.  All conditions precedent to this Petition have been performed, satisfied, or waived.

## THE ARBITRATION

7.  The Arbitration Award is the end product of an arbitration which commenced in September, 2002 and spanned almost 13 years (the "Arbitration"). The Arbitration was conducted in accordance with the commercial arbitration rules and procedures of the American Arbitration Association ("AAA") before Arbitrators Hon. Herbert Stettin (neutral/lead arbitrator), Paul J. McMahon, Esq., and Mark F. Raymond, Esq. (the "Panel"). In addition, to ensure due process and an orderly proceeding, the Panel determined that the Federal Rules of Civil Procedure and Evidence, as well as the Local Rules of the Southern District of Florida, would apply to the arbitration. Numerous evidentiary and other hearings were conducted during the course of the arbitration. In addition, hundreds of substantive motions were briefed with supporting memoranda, opposition memoranda and reply memoranda, and many of the Panel's substantive rulings were met with motions for reconsideration, which were similarly briefed and resolved by the Panel. In all instances and without exception, the parties' due process rights were respected during the entire course of the 13-year arbitration.

8. The Arbitration involved a breach of contract dispute arising from a Marketing Agreement, dated January 1, 1995, between GSI and NaBANCO, predecessor in interest to FDMS (the "Marketing Agreement"). A copy of the Marketing Agreement is attached hereto as Exhibit B. NaBANCO provided authorization, processing, and settlement services for third-party credit card transactions. In the mid-1990's, NaBANCO sought to expand its business by marketing its services to merchants that sold goods and services over the emerging Internet ("New NaBANCO Services"). Accordingly, NaBANCO entered into the Marketing Agreement with GSI to assist in marketing New NaBANCO Services.

9. During the term of the Marketing Agreement, GSI agreed to market New NaBANCO Services. In exchange, NaBANCO agreed to pay GSI a commission or fee from the net proceeds NaBANCO received for processing New NaBANCO Services procured by GSI. The Marketing Agreement also provided GSI the exclusive rights to market New NaBANCO Services to 34 "Tier One Companies" through December 31, 1996 (the "Exclusivity Period"). The list of Tier One Companies included Microsoft and Knight-Ridder, among others.

10. GSI was also entitled to a commission if an existing customer of New NaBANCO Services executed a second contract with NaBANCO for other related but different New NaBANCO Services as a result of GSI's services. These commissions were to be calculated from fees generated from processing categorized as "Incremental Business."

11. On September 17, 2002, GSI filed a Demand for Arbitration alleging that FDMS breached the Marketing Agreement. A copy of GSI's Demand for Arbitration is attached hereto as Exhibit C. On March 10, 2003 the AAA determined that the Arbitration would be conducted in the AAA facilities in Miami, FL.

12. Over the next 12 years, GSI claimed over $1 billion in damages and asserted

numerous legal theories. To address GSI's claims, the Arbitration was bifurcated between liability and damages. The hearing on the liability phase of the case occurred between November 14-18, 2005, and January 3-4, 2006, during which numerous witnesses testified. On April 29, 2006, the Panel entered its Preliminary Findings of Fact and Conclusions of Law, and Order ("Preliminary Findings"), which dismissed most of GSI's claims but found that GSI was entitled to move forward to prove damages on certain claims. A copy of the Panel's Preliminary Findings is attached hereto as Exhibit D.

13. GSI's largest claim was a claim for over $500,000,000 related to FDMS's processing for a non-Tier One Company, Wal-Mart ("Wal-Mart Claim"). On January 10, 2013, FDMS moved for summary judgment on the Wal-Mart Claim. The Panel granted FDMS's motion and dismissed the Wal-Mart Claim on February 8, 2013. A copy of the Panel's Opinion and Order Granting in Part, and Denying in Part, Respondent's Motion for Partial Summary Judgment is attached hereto as Exhibit E.

14. The final hearing on damages took place between March 4-8, 2013 and June 24-27, 2013, during which 21 witnesses testified, which included multiple expert witnesses called by both sides.

15. On December 11, 2013, the Panel entered its Findings of Fact and Conclusions of Law and awarded GSI $1,476,567 in compensatory damages under the following categories: (1) $161,425 in commissions related to all Tier One Company processing other than Microsoft; (2) $295,142 in commissions related to processing for Microsoft; and (3) $1,020,000 in commissions related to qualifying Incremental Business. A copy of the Panel's Findings of Fact and Conclusions of Law is attached hereto as Exhibit F.

16. After the issuance of the Findings of Fact and Conclusions of Law, on January 10,

2014, both parties submitted briefs requesting an award of attorneys' fees and costs pursuant to Section 4.2 of the Marketing Agreement.[1]

17. On March 14, 2014, the Panel found that FDMS was the prevailing party on the Wal-Mart Claim.

18. On August 21, 2014, the Panel issued an order awarding FDMS $137,437.20 in attorneys' fees for successfully defending against the Wal-Mart Claim. A copy of the Panel's Order on Respondent's Motion for Attorneys' Fees and Costs is attached hereto as Exhibit G. That same day, the Panel deemed GSI to be the prevailing party on certain of its claims. A copy of the Panel's Order on Claimant's Motion for Attorneys' Fees, Sanctions, and Reconsideration is attached hereto as Exhibit H.

19. On April 1, 2015 the Panel issued an order awarding GSI $4,316,249.50 in attorneys' fees and costs. A copy of the Panel's Corrected Amended Order on Claimant's Application for Attorneys' Fees and Costs is attached hereto as Exhibit I.

20. On May 15, 2015 the Panel entered and served the final Arbitration Award including all awardable pre-award interest in addition to the proper per diem amount of interest applicable until judgment is entered.

## MEMORANDUM OF LAW IN SUPPORT OF THE PETITION TO CONFIRM ARBITRATION AWARD

21. Section 9 of the FAA authorizes the Court to enter judgment upon the Arbitration Award. 9 U.S.C. § 9.[2] Section 9 further provides that the Court **must** confirm the award unless

---

[1] Section 4.2 of the Marketing Agreement provided for attorneys' fees and costs which GSI incurred if it prevailed in any legal action to enforce its rights under the Agreement. Pursuant to Fla. Stat. § 57.105(7), the Marketing Agreement's one-sided fee provision is reciprocal and therefore FDMS was entitled to attorneys' fees for all claims under the Marketing Agreement on which it prevailed.

[2] The FAA applies to contracts involving interstate commerce. 9 U.S.C. § 2. The Marketing Agreement concerned credit card transactions conducted over the Internet, which necessarily involved consumers, merchants, goods, and financial institutions located in numerous states. The Marketing Agreement itself was executed between NaBANCO, a Florida corporation, and GSI, a Delaware limited liability company with its principal place of

it is vacated, modified, or corrected pursuant to Sections 10 and 11 of the FAA. *Id.*

22. Confirmation proceedings under Section 9 cannot be used to relitigate issues resolved in the arbitration. The Eleventh Circuit has held that "the . . . goals of the FAA [are] achieved only to the extent that courts ensure arbitration is an alternative to litigation, **not an additional layer in a protracted contest**." *Adv. Bodycare Solutions, LLC v. Thione Intern., Inc.,* 524 F.3d 1235, 1240 (11th Cir. 2008) (emphasis added). The FAA presumes that arbitration awards will be confirmed. *Aviles v. Charles Schwab & Co., Inc.*, 435 Fed. App'x 824 (11th Cir. 2011). As such, federal courts should defer to an arbitrator's decision whenever possible. *Dorward v. Macy's Inc.*, 588 Fed. App'x. 951, 953 (11th Cir. 2014).

23. Section 10(a) of the FAA provides only four grounds for vacating an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

24. Further, the Eleventh Circuit has ruled that all judicially-created grounds for vacating an arbitration award are no longer valid in this Circuit. *Frazier v. CitiFinancial Corp., LLC*, 604 F. 3d 1313, 1324 (11th Cir. 2010).

25. Section 11 of the FAA permits modification of an arbitration award in three

business in Wilton, Connecticut.

Page 6 of 8
CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, Suite 900, Miami, FL 33131   Phone: 305.377.0700   Fax: 305.377.3001   www.cspalaw.com

limited situations:

    (a)    where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

    (b)    where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or

    (c)    where the award is imperfect in matter of form not affecting the merits of the controversy.

9. U.S.C. § 11.

Nothing in the Arbitration Award or in the Arbitration record remotely suggests that any of the grounds or conditions set forth in Sections 10 or 11 exist.

26. Finally, Section 12 of the FAA requires a party seeking to vacate, modify, or correct an arbitration award to serve notice of its intent. *Id.* § 12. GSI has not served such a notice on FDMS.

27. Accordingly, no grounds exist to vacate, modify, or correct the Arbitration Award, and absent such grounds, the Court must confirm the Arbitration Award.

**PRAYER FOR RELIEF**

28. For the foregoing reasons, FDMS respectfully requests that this Court (1) enter an order confirming the Arbitration Award in all respects, (2) enter final judgment thereon, and (3) award such other relief as the Court deems just and proper.

DATED this 15th day of May, 2015.

        Respectfully submitted,

        Spencer Silverglate
        Clarke Silverglate, P.A.
        799 Brickell Plaza, 9th Floor
        Miami, Florida  33131
        Telephone:  (305) 377-0700
        Fax:  (305) 377-3001


        By: /s/Spencer H. Silverglate
            Spencer H. Silverglate

        and

        John W. Peterson
        Milton S. McGee, III
        Riley Warnock & Jacobson, PLC
        1906 West End Avenue
        Nashville, TN  37203
        Telephone:  (615) 320-3700
        Fax:  (615) 320-3737

        *Counsel for Petitioner First Data Merchant Services Corporation*